IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LESLIE W. SHIPMAN,<br><br>  Plaintiff,<br><br>vs.<br><br>DONALD SOWELL, individually and in his official capacity as the Grimes County Sheriff; TOMMY GAGE, individually and in his official capacity as the Montgomery County Sheriff; JOSEPH SCLIDER; DAVID COOK; ALTON NEELY; TUCK McLAIN, in his official capacity as Grimes County District Attorney; GRIMES COUNTY, TEXAS; and MONTGOMERY COUNTY, TEXAS,<br><br>  Defendants | Case No. 16-cv-692 |

## ORIGINAL COMPLAINT

The Plaintiff, on information and belief, alleges and states the following:

1. This Court has jurisdiction insofar as the Plaintiff brings claims against the Defendants under 42 U.S.C. § 1983.

2. Venue is proper insofar as the Defendants are located in or reside in the Houston Division of the Southern District of Texas.

### Parties

3. Plaintiff Leslie W. "Les" Shipman is a resident of Grimes County, Texas.

4. Defendant Donald Sowell is the sheriff of Grimes County, Texas.

5. Defendant Tommy Gage is the sheriff of Montgomery County, Texas.

6. Defendant Joseph Sclider is a lieutenant in the Montgomery County Sheriff's Office, and he is the commander of the Montgomery County Auto Theft Task Force ("MCATTF").

7. Defendant David Cook is a deputy in the Montgomery County Sheriff's Department, and he is assigned to the MCATTF.

8. Defendant Alton Neely is a deputy in the Montgomery County Sheriff's Department, and he is assigned to the MCATTF.

9. Defendant Tuck McLain is the district attorney of Grimes County.

10. Defendant Grimes County is a political subdivision of the State of Texas.

11. Defendant Montgomery County is a political subdivision of the State of Texas.

### Factual Allegations

12. This is a case of dirty small-town politics wherein local officials are using the criminal justice system to drive a politically unpopular resident out of town. Plaintiff Leslie W. "Les" Shipman has operated an automobile maintenance shop along Highway 90 in Anderson, Texas since 2012. At any given time, cars and trucks in various states of repair can be found on his property, and town officials do not like having so many vehicles visible from Highway 90. On information and belief, Mr. Shipman alleges that officials of the City of Anderson incited law enforcement officials to harass him until he left town.

13. On or about July 29, 2013, Deputy David Cook of the MCATTF stopped Mr. Shipman while he transporting five trailers and a boat. Mr. Shipman owned the boat, and he produced paperwork showing that he had purchased the trailers at an auction conducted by the Harris County Sheriff's Office. Notwithstanding this, Deputy Cook confiscated all five trailers and cited Mr. Shipman for selling vehicles without a license. Deputy Cook claimed that the

trailers did not have vehicle identification ("VIN") numbers.  In reality, three of the trailers had VIN numbers, and a local justice of the peace Gene Stapleton returned those trailers to Mr. Shipman.  However, after Deputy Cook communicated with Judge Stapleton for about 30 minutes ex parte, Judge Stapleton refused to return the remaining two trailers on the proposterous grounds that he could not be sure that they were the same two trailers identified in the bill of sale produced by the Harris County Sheriff's Department.  All of the criminal charges concerning the trailers were dropped.  Rather than incur the additional expense of appealing Judge Stapleton's decision, however, Mr. Shipman let the government keep the two remaining trailers.

14. At least three times in 2013, Deputy Cook and Deputy Alton Neely appeared at Mr. Shipman's business to check the VIN numbers on all of the cars on Mr. Shipman's property.  They never found a single stolen car on Mr. Shipman's property, because there were no stolen cars on his property.

15. In response to the baseless confiscation of his trailers and the repeated on-site inspections of his business, Mr. Shipman called Lt. David Moore, who was then the commander of the MCATTF.  Mr. Shipman told Lt. Moore that he was being harassed by Deputy Cook and Deputy Neely, and he asked Lt. Moore to put an end to the harassment.  In response to Mr. Shipman's complaint, the officers of the MCATTF doubled down on their harassment of Mr. Shipman.

16. During 2013, Mr. Shipman and his business partner, Jerry Williams, made arrangements with Tim Debin for Mr. Debin to sell automobiles near his feed store in rural Grimes County as soon as Mr. Debin obtained his auto dealer's license.  Deputy Cook appeared at Mr. Debin's feed store and informed him that he would go to jail if he did business with Mr. Shipman.  Deputy Cook then mailed a citation to Mr. Shipman, citing him for selling cars

without a license, even though Mr. Shipman had not sold nor attempted to sell any cars on Mr. Debin's property. Mr. Shipman demanded a jury trial, but Grimes County officials never notified Mr. Shipman of his trial date.  When Mr. Shipman did not appear, he was cited for failure to appear, and both charges are still pending.  Meanwhile, Mr. Debins stopped doing business with Mr. Shipman and Mr. Williams because of the threats and harassment from Deputy Cook.

17. In 2014, Mr. Shipman and Darrin Westmoreland, another auto repair shop owner in Anderson, jointly agreed to transport some abandoned and junk vehicles from Mr. Westmoreland's repair shop to another location.  Some of the cars belonged to Mr. Shipman's customers, and some belonged to Mr. Westmoreland's customers.  According to Mr. Westmoreland, the city was considering a junk car ordinance, so both he and Mr. Shipman wanted to move the cars outside of the city limits.  Lt. Joseph Sclider, who had assumed the command of the MCATTF, subsequently arrested Mr. Shipman for transporting stolen vehicles, even though the vehicles were not stolen.  The person who reported them stolen was not an owner, yet the Grimes County Sheriff's Department released the vehicles to him anyway.  Meanwhile, Mr. Westmoreland was never charged with transporting stolen vehicles even though he and Mr. Shipman jointly agreed to move them. Nonetheless, Lt. Sclider warned Mr. Westmoreland not to do business with Mr. Shipman, and he warned Mr. Shipman that he had better not communicate with Mr. Westmoreland.

18. By 2015, Mr. Shipman had grown tired of the harassment in Grimes County, and he made arrangements to sell his business and move to Tennessee.  As part of those arrangements, Mr. Shipman and Mr. Williams scheduled an automobile auction for June 27, 2015, and Mr. Shipman hired Israel Curtis, a professional auctioneer, to conduct the auction. Mr. Curtis had never met Mr. Shipman or Mr. Williams before the auction, and he had no prior

dealings with them.  As the auction began,  Lt. Sclider and other officers from the MCATTF and Grimes County Sheriff's Department raided Mr. Shipman's business, seizing 56 cars from the auction.  Lt. Sclider summoned a local television station to broadcast the raid, and he falsely indicated that the vehicles were stolen.  "State law gives the general public 20 days or so to register [automobiles] in their name," he told KBTX in a videotaped interview. "If they don't the police can presume they are stolen and at this point we are going to have to find the rightful owner of these vehicles."  In reality, none of the vehicles were stolen, and Lt. Sclider knew that when he made the false statement.

19.     While the raid was ongoing, various members of the Anderson Board of Alderman were watching from across the street.  Alderwoman Irma Freeman was overheard telling other board members, "Well, that's one way we can get rid of that son of a bitch."

20.     In a June 22, 2015 affidavit in support of a warrant to search and seize evidence from Mr. Shipman's property, Lt. Sclider testified that "[i]t is the belief of affiant that a specific criminal offense has been committed, to wit: Conducting an unlicensed auction and the illegal sale of vehicles without proper paper work."  Both allegations were false, and Lt. Sclider had reason to know that they were false.  Elsewhere in his affidavit, Lt. Sclider testified, "Affiant can state, In Texas in order to for an individual to sell a vehicle, the title must be in the seller's name." This statement was false, and Lt. Sclider knew it was false. Under Texas law, someone with a power of attorney may sell a vehicle on behalf of another person.  In fact, that is exactly what was happening at the June 27, 2015 auction.  Mr. Williams's company owned some of the vehicles, and he had a power of attorney to sell vehicles on behalf of Rick Masto, the owner of most of the remaining vehicles.  Although Lt. Sclider admitted that he had been investigating the

auction weeks in advance, allegedly because the auction lacked the proper "paperwork", he had never bothered to check that paperwork prior to the auction.

21. With a television crew on hand, Lt. Sclider was not willing to admit that the raid was baseless and illegal. Instead, he doubled down on his misconduct, arrresting Mr. Shipman, Mr. Williams, and Mr. Curtis for engaging in organized crime, even though he knew the charge was meritless. Under Texas law, an organized crime charge must be supported by evidence that three or more people committed or conspired to commit one or more crimes specified in Texas Penal Code §71.02. According to Lt. Sclider, the three arrestees had conspired to tamper with a government record, namely an automobile title. Mr. Curtis, however, had no prior dealings with Mr. Shipman or Mr. Williams – he was simply an auctioneer who had been hired to conduct an auction on that particular day. He only knew that he was supposed to show up and auction the automobiles. Lt. Sclider admitted to Mr. Curtis, however, that he was "caught up" in the arrests because Lt. Sclider needed a third defendant to support the organized crime charge. Finally, the baseless allegation of record tampering was totally unrelated to the auction. The vehicle with the allegedly altered title had been sold months before the auction, yet the MCATTF seized all 56 vehicles anyway.

22. None of the 56 vehicles seized by the MCATTF and the Grimes County Sheriff's Department was stolen, and none of them had any "paperwork problems." Not one. The vehicles were supposedly seized as evidence, yet they are not evidence of any crime. Some of the vehicles were not even part of the auction. Instead, they were vehicles belonging to Mr. Shipman's customers, and they were at his shop awaiting repairs. The Grimes County Sheriff's Office subsequently released one of those cars to its owner, but it still has not released the remaining 55 cars.

23. After the raid and the arrests, Lt. Sclider decided to conduct the investigation that he should have conducted *before* the raid. Unfortunately, by that point Lt. Sclider's only interest was in covering up his misconduct. On July 6, 2015, Lt. Sclider appeared at the home of Mr. Masto, who was 70 years old and seriously ill (he died a few months later), and he threatened Mr. Masto with arrest if Mr. Masto did not produce a written statement disavowing Mr. Williams's authorization to sell Mr. Masto's vehicles at the June 27, 2015 auction. Lt. Sclider wrote the statement in in his own handwriting and directed Mr. Masto to sign it, which Mr. Masto did. Mr. Masto later disavowed the statement to a private investigator, further acknowledging that he had been pressured by Lt. Sclider.

24. On September 17, 2015, Plaintiff's Counsel sent a letter to the Grimes County Grand Jury outlining Lt. Sclider's misconduct and asking the grand jury to no-bill Mr. Shipman and investigate Lt. Sclider. The letter was copied to Grimes County District Attorney Tuck McLain and Sheriff Gage, among others. On the same date, Plaintiff's Counsel sent a letter to Sheriff Gage demanding the return of the seized vehicles.

25. On September 21, 2015, Plaintiff's Counsel published a blog post describing the misconduct of Lt. Sclider, and that post included a link to the letter to grand jurors. *See* "Montgomery County Auto Theft Task Force arrests first, investigates later", http://lawflog.com/?p=941. This embarrassed and enraged Lt. Sclider, Sheriff Sowell, Sheriff Gage, and Mr. McLain, so Mr. McLain persuaded the grand jury to indict Mr. Shipman, Mr. Williams, and Mr. Curtis, even though Mr. McLain knew that there was no factual or legal basis for the charge (and proving the old adage that a good prosecutor can get a grand jury to indict a ham sandwich).

26. On November 24, 2015, Plaintiff's Counsel sent a letter to Sheriff Gage regarding new evidence, namely the fact that Mr. Curtis said Lt. Sclider told him that he was "caught up"

in the arrests so that Lt. Sclider would have a third person to support an organized crime charge. In the letter, Plaintiff's Counsel warned Sheriff Gage about his refusal to investigate Lt. Sclider and the MCATTF: "Under the circumstances, your department's passivity can only be interpreted as tacit approval or ratification of Lt. Sclider's actions." Sheriff Gage did not investigate.

27.     On December 7, 2015, Plaintiff's Counsel sent a letter to Sheriff Sowell noting that none of the seized vehicles were stolen, and demanding their return. The letter included the following sentences:

> If you contend that there is some lawful basis for retaining the property seized from Mr. Shipman, please let me know within ten days of receipt of this letter. If I do not receive a response within that time, we will proceed with plans to sue the county for federal civil rights violations.

The letter also asked Sheriff Sowell to investigate the misconduct of Lt. Sclider. Sheriff Sowell never responded to the letter.

28.     Sheriff Sowell is an official policymaker for Grimes County.  Sheriff Sowell knew that the MCATTF was a rogue organization, yet he aided its attempts to harass Mr. Shipman and drive him out of town. Among other things, Sheriff Sowell sent his deputies to support the baseless raid on Mr. Shipman's business.  Sheriff Sowell knows that his department is holding vehicles that have no evidentiary value and are not related to any crime, yet he arbitrarily released one vehicle to its owner and refuses to release any others.  Sheriff Sowell has a policy of retaining unlawfully seized property and refusing to release that property to its owners, even after it is unequivocally clear that there is no reason to retain the seized property. Sheriff Sowell is retaining the vehicles in order to hurt Mr. Shipman financially and to retaliate against Mr. Shipman for exercising his First Amendment rights.  Sheriff Sowell has also ratified the unlawful acts of Lt. Sclider and the MCATTF.

29. Sheriff Gage is an official policymaker for Montgomery County.  He has known for years that the MCATTF is a rogue organization, yet he has failed to supervise or train the deputies assigned to MCATTF.  After learning of the unlawful acts of his deputies with respect to Mr. Shipman, Sheriff Gage consistently failed to supervise them, instead ratifying their illegal acts.

30. Grimes County District Attorney Tuck McLain knows that the organized crime charges against Mr. Shipman are meritless, and he is prosecuting Mr. Shipman in retaliation for the September 17, 2015 letter to the grand jury and the September 21, 2015 blog post.

## Claims

*Count One: Civil Rights Violations*

31. All previous paragraphs are incorporated herein by reference.

32. The Defendants conspired to violate and did violate 42 U.S.C. § 1983 by depriving Mr. Shipman of his Constitutional rights, namely his First, Fourth, and Fourteenth Amendment rights.

*Count Two: Tortious Interference*

33. All previous paragraphs are incorporated herein by reference.

34. Deputy Cook tortiously interfered with the business relationships of Mr. Shipman. Mr. Shipman brings tortious intereference claims against Deputy Cook strictly in his individual capacity. Notwithstanding any other provision in this complaint, Mr. Shipman does not assert state-law claims against any government Defendants or persons acting in an official capacity.

*Count Three: Civil Conspiracy*

35. All previous paragraphs are incorporated herein by reference.

36. The natural-person Defendants, acting in their individual capacities, participated in a civil conspiracy to engage in the unlawful acts listed above.

## Request for Relief

Wherefore, the Plaintiffs request that this Court:

a. Award compensatory damages against all Defendants other than Mr. McLain;

b. Award punitive damages against the individual and nongovernmental Defendants other than Mr. McLain;

c. Enjoin Mr. McLain from further prosecuting Mr. Shipman;

d. Award costs of this action to the Plaintiff;

e. Award reasonable attorney fees and costs to the Plaintiff;

f. Award all other relief to which the Plaintiffs are entitled, including other declaratory and equitable relief.

THE PLAINTIFF DEMANDS A JURY TRIAL.


Respectfully submitted,

**/s/ John T. Quinn**
John T. Quinn, Lead Counsel
SDTX Bar No. 8861
404 B East 27th Street
Bryan, Texas 77803
Tel.: (979) 822-4766
*john@quinnlaw.com*

**/s/ Ty Clevenger**
Ty Clevenger, Co-Counsel
SDTX Bar No. 727184
21 Bennett Avenue #62
New York, New York 10033
Tel: (979) 985-5289
Fax: (979) 530-9523
*tyclevenger@yahoo.com*


ATTORNEYS FOR PLAINTIFF
LESLIE W. SHIPMAN